AARON HAMILTON,

        Petitioner,

v.                                    CASE NO. 2:07-CV-10242
                                    HONORABLE PATRICK J. DUGGAN

BLAINE LAFLER,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR A WRIT OF HABEAS CORPUS

At a session of said Court, held in the U.S. District
Courthouse, Eastern District
of Michigan on December 1, 2008.

PRESENT:  HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Petitioner Aaron Hamilton ("Petitioner"), a Michigan prisoner, has filed a petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in

violation of his constitutional rights.  Following a jury trial in the Wayne County Circuit

Court, Petitioner was convicted of first-degree murder in violation of MICH. COMP.

LAWS ANN. § 750.316, assault with intent to commit murder in violation of MICH.

COMP. LAWS ANN. § 750.83, and possession of a firearm during the commission of a

felony in violation of MICH. COMP. LAWS ANN. § 750.227b.  In 2004, the state trial court

sentenced Petitioner to life imprisonment without the possibility of parole on the murder

conviction, a concurrent term of 50 to 100 years imprisonment on the assault conviction,

and a consecutive term of two years imprisonment on the felony firearm conviction. In his pleadings in support of his habeas petition, Petitioner raises claims concerning the denial of a continuance, the admission of hearsay, the pre-trial identification procedures, the validity of his sentence, and the effectiveness of trial counsel. For the reasons stated, the Court denies the petition for a writ of habeas corpus.

## I. Facts and Procedural History

Petitioner's convictions arise from the shooting of two individuals in Inkster, Michigan, on December 25, 2003. The Michigan Court of Appeals summarized the underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> At approximately noon on Christmas Day in 2003, defendant was driving in a residential area in the city of Inkster. He stopped and picked up a young acquaintance, Dario Dennard, who was walking through the neighborhood. Shortly thereafter, defendant parked his car in front of a house and jumped out, carrying a shotgun. Defendant fired a shot at the house and injured Dawn Lange, who was standing in front of her kitchen window. He then chased Lamarr Moy, his intended victim, through a neighboring yard, and shot him in the back with a shotgun.
>
> When defendant left the vehicle to chase Mr. Moy, Mr. Dennard moved into the driver's seat. Mr. Dennard testified that he intended to leave the scene without defendant, but defendant returned too quickly. Mr. Dennard testified that, at defendant's direction, he then drove to a nearby apartment building and parked the car. The two men briefly hid at the home of a friend before separating. Mr. Dennard then walked to his godmother's house where he called a relative to ask for

a ride home. Paula Dennard, Mr. Dennard's mother, testified that he told her about the shooting later that evening.

While defendant and Mr. Dennard were hiding, Detective Anthony Abdallah of the Inkster Police Department responded to the scene of the shooting. When he arrived, Mr. Moy was standing on a porch, but fell to the ground when he tried to walk toward the detective. Mr. Moy was covered in blood. Detective Abdallah asked Mr. Moy to identify the shooter. However, Mr. Moy's right lung had been punctured. He did not identify his shooter; he only responded with the word "air." Mr. Moy was unable to respond to any further questions and died shortly after arriving at the hospital.

The morning after the shooting, the Dennard family awoke late and found defendant asleep on their couch. Mrs. Dennard asked defendant to explain why he shot Mr. Moy and subsequently asked him to make a written statement absolving her son of any fault. Mrs. Dennard testified that defendant instructed her to write the statement, claiming that his handwriting was messy. She testified that defendant subsequently read and signed the two-page statement. Mrs. Dennard then called the police and offered defendant a meal to stall his departure until the police arrived.

*People v. Hamilton*, No. 255449, 2005 WL 3500867, *1 (Mich. Ct. App. Dec. 22, 2005)

(unpublished).

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, raising several claims of error including those presented on habeas review. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Hamilton*, 475 Mich. 886, 715 N.W.2d 887 (2006).

Petitioner thereafter filed his federal habeas petition, asserting the following claims as grounds for relief:

I.    He was denied a fair trial and due process of law due to the trial court's refusal to allow a continuance so that the defense could secure the attendance of a recently-discovered *res gestae* witness.

II.   The lower court erroneously allowed a hearsay comment into evidence as a dying declaration, and thereby deprived him of a fair trial.

III.  He was denied due process when, while in police custody, he was denied a live line-up, and counsel was not present during the photographic line-up given, thereby violating his rights under the Fifth and Fourteenth Amendments to the United States Constitution.

IV.   The trial court erred by issuing him a sentence that exceeded his guidelines, resulting in cruel and unusual punishment, violating his rights under Article 1, Section 16 of the 1963 Michigan Constitution and the Eighth Amendment to the United States Constitution.

V.    He was denied the effective assistance of counsel when counsel refused to file a motion contesting his illegal arrest, failed to request a handwriting analysis, and failed to properly impeach a prosecution witness, denying his rights under the Sixth Amendment to the United States Constitution.

Respondent filed an answer to the petition contending that it should be denied because the claims are defaulted, not cognizable, and/or lack merit. Petitioner filed a reply to that answer.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409, 120 S. Ct. at 1521. "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411, 120 S. Ct. at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

### III. Analysis

### A.

Petitioner first asserts that he is entitled to habeas relief because the trial court denied his request for a continuance on the first day of trial so that he could locate two witnesses. The Michigan Court of Appeals described the pertinent facts for this claim as follows:

> Moments before his trial began, defendant moved for a thirty-day adjournment. He claimed that he had just discovered two *res gestae* witnesses who would bolster his defense. Defendant asserted that the first witness, Hilda Davis, would testify that she saw someone other than defendant fleeing the scene of the crime. He identified the second witness as a woman named Jennifer, but did not specify the substance of her testimony. Defendant contended that he needed more time to locate this second witness and properly subpoena them both. The trial court determined that defendant had been given ample opportunity to investigate his case and could still subpoena these witnesses, as the defense would not present its case until the following day. Therefore, the court denied the motion.

*Hamilton*, 2005 WL 3500867 at *1. Respondent contends that this claim lacks merit.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967). However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id*. (internal quotations omitted). Additionally, a trial court has broad discretion in determining whether to grant or deny a motion for a continuance or adjournment in a criminal case. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 849 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11, 103 S. Ct. 1610, 1616 (1983) (recognizing that trial courts have "broad discretion" in matters related to continuances). When a habeas petitioner challenges the grant or denial of such a request, not only must there have been an abuse of discretion, the trial court's decision "must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Bennett v. Scroggy*, 793 F.2d 772, 774-75 (6th Cir. 1986).

The Michigan Court of Appeals denied relief on this claim, finding the trial court did not abuse its discretion by denying Petitioner's motion for an adjournment. The court found that Petitioner failed to exercise due diligence in locating the witnesses before trial, that he admitted that he could easily locate Hilda Davis, and that he failed to indicate the substance of the testimony to be provided by the witness identified as Jennifer. *See Hamilton*, 2005 WL 3500867 at *2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, the defense was aware of these witnesses before trial and had a reasonable opportunity to locate them and secure their presence at trial. Second, the record indicates that a woman named Hildred Massie testified for the defense at trial and that her testimony tracked the proposed testimony of Hilda Davis such that Petitioner was able to present testimony beneficial to his defense.[1] Third, Petitioner never made an offer of proof as to Jennifer's testimony. Fourth, Petitioner has not shown that a continuance would have benefitted the defense. In the state courts and in this Court, Petitioner has only speculated that additional time would have allowed him to locate the witness identified as Jennifer and that she would have testified in his favor. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998).

Lastly, even if the trial court erred in this regard, such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1721-22 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S. Ct. 992, 999 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial

---

[1]It is not entirely clear from the record whether Hildred Massie is the "Hilda Davis" Petitioner intended to produce when he requested the continuance, but Petitioner seems to concede as much. *See* Petition at 2. If Hildred Massie was the intended witness, then Petitioner has clearly failed to establish that he was prejudiced by the continuance denial as to her testimony.

8

error had substantial and injurious effect or influence upon jury's verdict).  Given the significant evidence of guilt presented at trial, including Dario Dennard's testimony, Petitioner's signed statement, and Walter Lange's identification testimony, any error by the trial court in refusing to grant a continuance did not have a substantial and injurious effect or influence on the jury's verdict.  Habeas relief is not warranted on this claim.

## B.

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting victim Lamarr Moy's hearsay statement, "air," as a dying declaration.  Respondent contends that this claim is not cognizable upon habeas review and otherwise lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals concluded that the trial court did not err in admitting the victim's words as a dying declaration.  *See Hamilton*, 2005 WL 3500867 at *2.  To the extent that Petitioner challenges this ruling under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief.  *See, e.g., Wheeler v. Jones*, 59 Fed. Appx. 23, 28 (6th Cir. 2003).

Moreover, Petitioner is not entitled to relief on any claim that the admission of this testimony violated his confrontation and due process rights. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. *See Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110 (1973). The Sixth Amendment's protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847-48, 110 S. Ct. 3157, 3164 (1990). In *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004), the United States Supreme Court held that out-of-court statements which are testimonial in nature are barred by the Confrontation Clause of the Sixth Amendment if the declarant is unavailable at trial and the defendant did not have a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. The Supreme Court, however, indicated that dying declarations may be an historical exception to this rule. *Id.* at 56 n. 6, 124 S. Ct. at 1367, n. 6. The Supreme Court also confirmed that the rule of forfeiture by wrongdoing, *i.e.*, that a defendant may not benefit from his wrongful prevention of a witness's future testimony, extinguishes confrontation claims on equitable grounds. *Id.* at 62, 124 S. Ct. at 1370; *see also* Mich. R. Evid. 804(b)(6).

Following *Crawford*, several courts have found a Confrontation Clause exception for dying declarations, *see Duncan v. Bobby*, No. 1:07 CV 839, 2008 WL 111229, *8 (N.D. Ohio Jan. 8, 2008); *People v. Taylor*, 275 Mich. App. 177, 182-83, 737 N.W.2d 790 (2007); *People v. Monterroso*, 34 Cal. 4th 743, 22 Cal. Rptr. 3d 1, 101 P.3d 956

10

(2004), although two have not.  *See United States v. Mayhew*, 380 F. Supp. 2d 961, 965-66 (S.D. Ohio 2005); *United States v. Jordan*, No. 04-CR-229-B, 2005 WL 513501, *3 (D. Colo. March 3, 2005).  Moreover, several courts, including the United States Court of Appeals for the Sixth Circuit, have recognized the continuing viability of forfeiture by wrongdoing doctrine.  *See, e.g.*, *United States v. Garcia-Meza*, 403 F.3d 364, 370 (6th Cir. 2005) (upholding admission of murder victim's police statement about defendant's prior abuse); *Mayhew*, 380 F. Supp. 2d at 966-68 (admitting victim's dying declaration); *People v. Bauder*, 269 Mich. App. 174, 185-87, 712 N.W.2d 506 (2005) (citing *Garcia-Meza* and upholding admission of murder victim's statements).  Given that the victim was unable to testify at trial due to Petitioner's wrongful conduct, it cannot be said that the admission of his final words rendered Petitioner's trial fundamentally unfair.  Further, given the Supreme Court's observations about the survival of the dying declaration exception, the admission of the victim's statement, even if testimonial, does not satisfy the stringent standard for relief under the AEDPA.  Habeas relief is not warranted.

## C.

Petitioner next asserts that he is entitled to habeas relief due to faulty pre-trial identification procedures.  Specifically, Petitioner claims that counsel was not present during a suggestive photographic array in which Walter Lange, a witness to the shooting, identified him as the shooter and Petitioner claims that he was entitled to a live corporeal line-up.  Respondent contends that these claims lack merit.

A conviction based on identification testimony following pre-trial identification

violates due process when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968). An in-court identification by a witness to whom the accused was exhibited before trial in an unduly suggestive manner must be excluded unless it can be established that the identification has an independent origin which is not tainted by the suggestive pre-trial identification procedures. *See United States v. Wade*, 388 U.S. 218, 241, 87 S. Ct. 1926, 1939 (1967).

Petitioner first asserts that the photographic array and Walter Lange's related identification were inadmissible due to the absence of counsel during the array. The Michigan Court of Appeals denied relief on this claim finding that Petitioner was not entitled to counsel at the photographic array because he was not in custody at the time. *See Hamilton*, 2005 WL 3500867 at *3.[2] This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. However, the Sixth Amendment does not grant a defendant the right to counsel at a photographic array conducted by the government for the purpose of allowing a witness to attempt the identification of the offender, even when the array is conducted after an arrest, or after an

---

[2]The court specifically found that the photographic array occurred at 11:30 a.m. on December 26, 2003 and that Petitioner was not arrested until 1:24 p.m. that day. *See Hamilton*, 2005 WL 3500867 at *3. The state court's factual findings are presumed correct, *see* 28 U.S.C. § 2254(e)(1), and Petitioner has not rebutted these findings with clear and convincing evidence.

indictment or charges have been returned. *See United States v. Ash*, 413 U.S. 300, 321 (1973); *Van v. Jones*, 475 F.3d 292, 311 (6th Cir. 2007); *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000).[3]  Thus, the mere fact that counsel was not present at the photographic array does not render Walter Lange's identification and subsequent testimony unconstitutional as a matter of federal law.

Petitioner relatedly claims that the photographic array was unduly suggestive because the men in the other photographs were much thinner and their only resemblance to him was their "poofy" hairstyles.  The Michigan Court of Appeals found this claim to be abandoned on appeal due to Petitioner's failure to provide the court with quality photographs of the array to review.  *See Hamilton*, 2005 WL 3500867 at *4.  Because the state appellate court did not address the merits of this issue, the Court shall conduct a *de novo* review.  *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

As noted, due process is violated when a pre-trial identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. The Sixth Circuit follows a two-step analysis in determining whether an identification is admissible.  *See United States v. Crozier,* 259 F.3d 503, 510 (6th Cir.2001) (citing

---

[3]Michigan law provides that a photographic identification in the absence of counsel when a defendant is in custody, absent exigent circumstance, is inappropriate.  *See, e.g., People v. Kurylczyk*, 443 Mich. 289, 302, 505 N.W.2d 528 (1993).  Whether Petitioner had a right to counsel under state law is irrelevant, however, because "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990); *see also Estelle*, 502 U.S. at 68, 112 S. Ct. at 480.  Further, as noted by the Michigan Court of Appeals, Petitioner was not in custody at the time of the photographic array.  *See Hamilton*, 2005 WL 3500867 at *3.

*Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir.1994)). A court must first determine whether the identification procedure was suggestive. *Id.* If the court finds that the procedure was suggestive, then it must determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible. *Id.* The five factors to be weighed in determining reliability are: 1) the opportunity of the witness to view the perpetrator during the crime; 2) the witness's degree of attention to the perpetrator; 3) the accuracy of the witness's prior descriptions of the perpetrator; 4) the level of certainty demonstrated by the witness when identifying the suspect; and 5) the length of time between the crime and the identification. *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375 (1972)). "'Against these factors is to be weighed the corrupting effect of the suggestive identification itself.'" *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243 (1977)); *see also Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000).

Petitioner has not shown that the photographic array was impermissibly suggestive. The testimony at the state court suppression hearing reveals that the array consisted of photographs of six African-American males with poofy hair, facial hair, and wider noses, and that at least one man shared Petitioner's build. From this record, the Court cannot conclude that the photographic array was unduly suggestive. Further, even if it were, Petitioner has not shown that Walter Lange's in-court identification, which occurred four months after the shooting, was unreliable. Lange testified that he was 25 feet from Petitioner, that he saw Petitioner's face during the daytime incident, that he

14

recognized Petitioner from the shooting, and that he was certain about his identification. Given such circumstances, Lange's identification was sufficiently reliable such that its admission did not violate Petitioner's constitutional rights.

Lastly, Petitioner asserts that he was deprived of his right to a live corporeal lineup before trial. The Michigan Court of Appeals denied relief on this claim finding that Petitioner was not entitled to a live lineup at the time of the photographic array because he was not yet in custody. *See Hamilton*, 2005 WL 3500867 at *3. This decision is neither contrary to Supreme Court law nor an unreasonable application thereof. A criminal defendant has no federal constitutional right to a corporeal lineup. *See, e.g., Payne v. Smith,* 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (citing cases). Additionally, Walter Lange expressed an independent basis for his identification of Petitioner as the shooter – his recollection of the incident.

Petitioner has not shown that the pre-trial identification procedures and the admission of Walter Lange's identification testimony violated fundamental fairness. He is therefore not entitled to habeas relief on such a basis.

## D.

Petitioner next asserts that he is entitled to habeas relief because the trial court violated the Michigan Constitution and the Eighth Amendment to the United States Constitution by departing above Michigan's sentencing guidelines in sentencing him to 50 to 100 years imprisonment on his assault with intent to murder conviction. The sentencing guidelines called for a minimum sentence of 108 to 180 months (9 to 15 years)

imprisonment. Respondent contends that this claim is not cognizable, lacks merit, and need not be addressed pursuant to the concurrent sentence doctrine.

Petitioner's claim that the trial court erred in departing above the guideline range is not cognizable on federal habeas review because it is basically a state law claim. *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001); *see also Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003). "In short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error in departing above the guideline range does not merit habeas relief.

Moreover, as noted by the Michigan Court of Appeals in affirming Petitioner's assault sentence, the trial court had substantial and compelling reasons under Michigan law to depart above the guidelines: the barbaric nature of the shooting, the fact that Petitioner had no reason to shoot at Lange's house, and the fact that the bullet which struck Dawn Lange nearly struck her three-year-old daughter. *See Hamilton*, 2005 WL 3500867 at *5. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Petitioner has failed to state a claim upon which federal habeas relief may be granted as to this issue.

Petitioner also cannot prevail on his claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does

not require strict proportionality between a crime and its punishment.  *See Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S. Ct. 2680, 2686 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583.  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 231 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was sentenced to 50 to 100 years imprisonment on his assault with intent to murder conviction.  While the sentence exceeds the state guideline range, it was within the statutory maximum of life imprisonment.  *See* MICH. COMP. LAWS ANN. § 750.83.  The trial court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment.  Habeas relief is not warranted on this claim.

## E.

Lastly, Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to challenge the legality of his arrest, for failing to request a handwriting analysis, and for failing to sufficiently impeach witness Dario Dennard.  Respondent contends that these claims lack merit.

In order to establish ineffective assistance of counsel, Petitioner must show "that

17

counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id*. at 689, 104 S. Ct. at 2065. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. Moreover, a petitioner generally will be unable demonstrate that any errors by counsel prejudiced the defense where "there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim." *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).

Petitioner first asserts that his trial counsel was ineffective for failing to challenge the legality of his arrest. Ordinarily, habeas relief is not available for a perceived Fourth Amendment violation when a habeas petitioner has a full and fair opportunity to litigate the issue in the state courts. *See Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037 (1976). A habeas petitioner, however, may base a claim of ineffective assistance of counsel on an assertion that trial counsel failed to properly litigate a Fourth Amendment issue. *See*

*Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2583 (1986). To obtain

habeas relief under such circumstances, the petitioner must "prove that his Fourth

Amendment claim is meritorious and that there is a reasonable probability that the verdict

would have been different absent the excludable evidence in order to demonstrate actual

prejudice" under *Strickland*. *Id*.; *see also Joshua v. DeWitt*, 341 F.3d 430, 437-38 (6th

Cir. 2003).

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on

this claim, concluding that counsel was not ineffective because any objection by counsel

to Petitioner's arrest and arraignment would have been futile. The court found that the

police had probable cause to arrest Petitioner based upon Paula Dennard's telephone call

and Walter Lange's photographic identification which occurred prior to Petitioner's

arrest.

This decision is neither contrary to Supreme Court precedent nor an unreasonable

application thereof. It is well-established that the Fourth Amendment requires probable

cause for an arrest. *See Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir.

2003). This inquiry turns on whether the facts and circumstances within the officer's

knowledge "are sufficient to warrant a prudent person, or one of reasonable caution, in

believing, in the circumstances shown, that the suspect has committed, is committing, or

is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627,

2632 (1979) (citing cases); *see also Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001).

The testimony at trial indicated that the police had probable cause to arrest Petitioner

based upon Mrs. Dennard's telephone call and Mr. Lange's identification. The record also indicates that Petitioner was arraigned within 48 hours of his arrest. Consequently, any objection by defense counsel to such matters would have been futile. Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996). Habeas relief is not warranted.

Petitioner next asserts that defense counsel was ineffective for failing to produce a handwriting expert to challenge the authenticity of his signature on the statement written by Paula Dennard. The Michigan Court of Appeals denied relief on this claim, explaining that defense counsel chose to challenge the Dennards' motivations for presenting the statement and that Petitioner failed to show that an expert witness would have discredited his signature on the statement. *See Hamilton*, 2005 WL 3500867 at *5.

This decision is neither contrary to *Strickland* nor an unreasonable application of federal law or the facts. Defense counsel may have reasonably determined that discrediting the Dennards' testimony concerning the statement was an effective trial strategy. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Moreover, Petitioner has not shown that he was prejudiced by counsel's conduct given that he has not provided evidence that a handwriting expert would have provided favorable testimony. As noted, conclusory allegations do not provide a basis for habeas relief. *See Workman*, 160 F.3d at

287 (unsupported claims of ineffective assistance of counsel do not warrant habeas relief); *see also Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions and conclusory allegations do not provide a sufficient basis for an evidentiary hearing in habeas proceedings). Habeas relief is not warranted on this claim.

Lastly, Petitioner asserts that counsel was ineffective for failing to sufficiently impeach Dario Dennard. The Michigan Court of Appeals denied relief on this claim, stating in relevant part:

> We agree with defendant that defense counsel failed to further impeach the testimony of Dario Dennard. Generally, questions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. The failure to introduce evidence or question witnesses can constitute ineffective assistance of counsel when it deprives a defendant of a substantial defense; *i.e.*, one that might affect the outcome of the trial. The inconsistencies in Mr. Dennard's testimony are glaring on the record, and defense counsel should have highlighted them on cross-examination. However, it is clear from the record that the trier of fact did hear the witness's differing version of events during direct examination by the prosecutor. Although defense counsel was deficient in this regard, he did highlight the discrepencies in closing argument and, therefore, reversal is unwarranted.

*Hamilton*, 2005 WL 3500867 at *5 (footnotes omitted).

This decision is neither contrary to *Strickland* nor an unreasonable application thereof. Even assuming that defense counsel was deficient for insufficiently cross-examining Dario Dennard, Petitioner has failed to establish that he was prejudiced by counsel's conduct. The inconsistencies in Dennard's testimony were apparent from the

prosecution's questions and defense counsel pointed out those inconsistencies during closing arguments. Further, the jury was made well aware of Dario Dennard's possible motives in testifying against Petitioner during the course of trial. Given such circumstances, Petitioner cannot establish that counsel was ineffective under the two-pronged analysis of the *Strickland* standard. Habeas relief is not warranted on this claim.

### IV. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Aaron Hamilton, #494684
Marquette Branch Prison
1960 U.S. Hwy. 41 South
Marquette, MI   49855

Andrew Shirvell, Assistant Attorney General